# J. A. McBRADY v. MONARCH ELEVATOR COMPANY.[1]

December 23, 1910.

Nos. 16,895—(165).

**Construction of grain buyer's contract — new trial.**

Respondent was employed as agent for appellant at its elevator in the village of Barry, and his duty was to purchase grain, store it in the elevator, and ship it out in car lots, upon the order of appellant; and he brought this action to recover the sum paid by him to cover shortage claimed to have been fraudulently represented to exist by appellant. *Held:*

1. The contract was that respondent should inspect and weigh the grain, make the necessary dockage for dirt or foreign matter, and issue tickets for the net amount of grain received. Respondent was held responsible for the gross weight at the terminal points of shipment, and, in estimating whether or not there was a shortage in any particular kind of grain between the gross amounts at the elevator and at the terminal points, respondent was entitled to a credit of overages in any other kind of grain received and shipped.

2. There was evidence sufficient to sustain a finding that there was a shortage of six hundred sixty-nine bushels of wheat; but there was also evidence as to overages in flax, barley, and oats sufficient to reduce the total value of the shortage to $133.86.

3. The evidence was sufficient to sustain the jury in finding that respondent paid to appellant the sum of $516.18, because of appellant's fraudulent representations that respondent was indebted to it in that amount for shortage of grain shipped.

The jury returned a verdict of $650.04 for respondent, being the full amount of the shortage claimed by appellant; and upon appellant's motion for a new trial the court granted the motion, unless respondent would consent to a reduction of the verdict to $516.18. Appellant was not prejudiced by the order.

Action in the district court for Big Stone county to recover $650.04, alleged to have been paid on account of fraudulent representations. Among other matters, the complaint alleged that the claim of shortage by defendant was wholly and unconditionally

[1] Reported in 129 N. W. 163.

false and untrue, and was known by defendant to be false and untrue at the time the same was made, and in fact there was no shortage in plaintiff's grain account whatever; that plaintiff did not return to Minnesota until 1904, at which time upon investigation he found the platform scale at the elevator at Barry was defective and would not weigh accurately, and was so constructed that on heavy loads it would overweigh and show a greater quantity of grain than that actually weighed; that plaintiff at different times demanded a statement and accounting for the claimed shortage upon which had been collected the sum of $650.04, but defendant at all times refused to furnish plaintiff any information, or to show him any of the books or records, or to account to him in any manner, or give him any information relative to the basis of the claim. It also alleged that in the year 1907, upon more careful investigation, he ascertained for the first time that the claim of shortage on behalf of defendant was wholly false and untrue.

The answer alleged that under the contract of employment plaintiff agreed to guarantee and did guarantee the correctness of the weights of all grain purchased by him during his employment, and a part of his duty was to ascertain each day whether the scales provided by defendant for the weighing of grain were in a proper state of adjustment, and whether the same were accurately weighing, and to report daily to his employer the condition of the scales; that he did report daily concerning the scales; that relying upon the reports of the amount of grain purchased by plaintiff as furnished by him to defendant, and the weighing and inventory of the grains so turned over to defendant at the termination of plaintiff's employment, and in good faith relying upon the fact so appearing that plaintiff had failed to account for various kinds and quantities of grain, defendant presented a statement of the amounts and kinds of grain for which plaintiff had failed to account and demanded an accounting; that thereupon plaintiff agreed with defendant that the amount of plaintiff's delinquency was $650.04, whereupon plaintiff voluntarily paid that sum to defendant in satisfaction of the claims against him; that after the discovery of the shortage, plaintiff especially requested defendant to refrain from presenting its claim to

the surety company, agreeing to pay the claim in full; that acting upon this request, defendant refrained from reporting the shortage and released the surety company from all liability on its bond; that the time within which an action upon the bond could be brought had long since expired, and that, if plaintiff should recover in this action, defendant would be deprived of its remedy against the surety company.

The reply alleged that plaintiff did make regular reports to defendant; that the scales at all times appeared to be correct and when not loaded would balance accurately, but by reason of the negligent and defective manner in which defendant had caused them to be set into the elevator, and by reason of the defective mechanical construction, they would not weigh accurately when heavily loaded; that the defect was not such as could have been determined by plaintiff by any inspection that he could have made, and there was nothing about the operation of the scales to give notice or warning, or furnish any information to the party using them that they were not working properly and accurately.

The case was tried before Flaherty, J., and a jury which returned a verdict for plaintiff for the amount demanded. The amount of the verdict was thereafter reduced to $253.30 and again changed to $516.18. From the judgment entered pursuant to the verdict as reduced, defendant appealed. Affirmed.

*Purcell & Divet* and *A. B. Kaercher,* for appellant.
*Cliff & Purcell,* for respondent.

LEWIS, J.

Respondent was in the employ of appellant from August to November 15, 1902, as agent in charge of its elevator at Barry, Minnesota. It was his duty to buy grain from the farmers, store it in the elevator, and ship it out in car lots, according to the order of appellant. The action is to recover money paid on misrepresentation of appellant. Respondent was compelled to resign his position November 15 and go to North Dakota, for the purpose of living on the homestead upon which he had previously filed, and after reaching Dakota, a point over four hundred miles from Minneapolis, he was

informed by appellant that he was indebted to the company in the sum of $650.04, for shortage on account of the difference in amount of grain taken in at the elevator and the amount received at the terminal points; that such representations were false, and made for the purpose of inducing respondent to pay the amount claimed at a time when he was unable to examine and prove the facts, but that, relying on such representations, he paid the money, with the intention of subsequently ascertaining the facts. Respondent was under bond to a surety company for his faithful conduct as an agent, and for the purpose of protecting his reputation from being discredited by the bonding company he made the settlement, subject to his right to a subsequent examination of the books and records.

The complaint charged that the scales upon which the grain was weighed when received in the elevator were imperfect, and for that reason there was an apparent shortage, when in fact there was none. The jury returned a verdict of $650.04, the total amount of shortage claimed by appellant and paid by respondent, whereupon, on motion for a new trial by appellant, the court reduced the verdict, first, to the sum of $253.30, and later modified that order, and reduced it to $516.18, for which amount judgment was entered, and appeal was taken.

The essential issues may be disposed of as follows: (1) What was the contract between the parties? (2) What, if any, shortage was established by the evidence? (3) Was there any evidence reasonably tending to support the claim that appellant induced respondent to make settlement and pay the amount of $650.04 by falsely representing to him that the grain shipped was short in that amount? (4) Did the court err in granting a new trial, unless respondent would consent to a reduction of the verdict to $516.18?

It is claimed by appellant that the contract was that respondent should be charged with the net amount of the grain received at the terminal points, and not the gross weights; that respondent was responsible for the difference in dockage between the receiving and delivering points, and was to stand the loss. Respondent claimed that he was employed as agent of appellant on a salary, and that his

responsibility ended after using his best judgment in inspecting the grain received, and that appellant assumed the loss, if any, on account of difference in dockage. There is no ground for argument on this question. The correspondence between the parties with reference to the method of dockage fails to support appellant in this position, and the surety bond recognized gross weights as the proper basis for estimating shortage. Besides, such a contract as appellant insists on would be so manifestly harsh and unjust that it would require clear evidence to show that respondent had subjected himself to such terms.

2. According to appellant's letter of December 20, respondent was charged with a shortage of 669 bushels of wheat at 63 cents per bushel, and 258.4 bushels of flax at $1.02 per bushel, and given credit for 37 bushels and 12 pounds of barley at 39 cents per bushel, and 83 bushels and 28 pounds of oats at 24 cents per bushel, making a total of $650.04. At the trial the evidence showed that there was at least a total shortage of 478 bushels and 50 pounds of wheat, and an overage of barley of 135 bushels and 22 pounds, and of oats 72 bushels and 9 pounds, and, further, that there was an overage of flax of 247 bushels and 38 pounds, instead of being a shortage of 258 bushels, as claimed by appellant. There are some differences in the amount claimed by the parties as to overages on oats and barley, and the amount of shortage on wheat. The real controversy was with reference to the flax. According to the gross weights, there was an overage of at least 247 bushels and 38 pounds of flax, which entitled respondent to a credit of $252.44. Therefore, while there was a shortage in wheat, there was no shortage in the entire account.

3. The court properly instructed the jury that, if they should find that appellant made the claim of shortage in good faith, in an honest interpretation of the contract, there could be no fraud, and respondent could not recover. This leads to an examination of the evidence as to what were the facts necessarily within the knowledge of appellant at the time of making the demand for payment of the flax. It appears that respondent kept no books at the elevator, except a stub book, upon which was noted the amount of the grain

received and the name of the party to whom tickets were issued and a report of these was made to the head office at Minneapolis. Respondent handled no cash and paid for no grain. The tickets were presented at the bank or at a store in Barry for payment. All of the books and records showing the amount of grain received at the terminal points, and the amount of the dockage made by the state weighmaster, were in possession of appellant at its office in Minneapolis. There was no ground for claiming respondent was indebted for the flax. No explanation was given, unless it was the difference in dockage. The demand was without excuse, and considering the situation in which respondent was placed, and his inability to make an examination at that time, we think it fairly a question for the jury to determine whether the demand was not made with the intention of forcing respondent to pay a claim which appellant knew was without legal basis. Respondent's payment of the demand was consistent with a belief that the shortage claimed was the difference in the gross weights between the shipping and the terminal points; and, not being in possession of all the facts, he had the right to assume that the amount demanded was correct. This was not a voluntary payment. A payment induced by the fraud of the payee may be recovered. Schaller v. Borger, 47 Minn. 357, 50 N. W. 247.

4. The court instructed the jury as follows: "Now, gentlemen of the jury, if you find as a matter of fact, under the evidence, that there was an actual shortage as claimed by the defendant, and that the plaintiff paid over the money for the purpose of settling that and paying it, and squaring the matter up and adjusting the claim then presented to him and made by the defendant, * * * plaintiff could not recover here; and in fact the plaintiff does not claim, and no claim could be made on behalf of the plaintiff, that if there was a legitimate and actual shortage, and he paid it, that he could recover back any part of it, either the $650.04, or any part of it." Later on the court instructed as follows: "If the money was obtained by false and fraudulent representations made by the defendant to the plaintiff, and plaintiff relied upon them to his damage, the plaintiff is entitled in this action to recover back whatever money

he paid to defendant that defendant was not properly entitled to under its contract and agreement with this plaintiff." And again: "If you find that issue in favor of plaintiff, then you would return a verdict in favor of the plaintiff for such sum or such part of the $650.04 as you find that he was improperly led to part with at the time of the settlement by reason of the false and fraudulent representations made. In any event, he could not recover here anything, in excess of $650.04, and he cannot recover here anything, except he satisfies you by a fair preponderance of the evidence that he was led and induced to part with the money paid over by reason of the improper and unlawful practices of the defendant."

If there was a dispute about the amount of shortage, and respondent paid the sum of $650.04 voluntarily, for the purpose of settling the dispute, he could not recover, although he may have paid for more than the actual shortage. But it does not necessarily follow that he cannot recover, simply because he was owing some part of the amount which he paid. If he was induced to part with $516.18 by reason of appellant's false representations as to the flax, then he was not estopped from recovering that amount, simply because he voluntarily paid what was due for shortage on wheat. No exceptions were taken to the charge, and although in the first part quoted the court stated that respondent could not recover any part of the $650.-04, if there was any shortage, it was followed by the instruction that respondent could recover any part which he paid by reason of fraudulent representations. A finding by the jury that there was no shortage at all does not argue that they did not find that there was fraud as to the flax. Under the evidence and the instructions, the jury might have returned a verdict for $516.18, and the result is the same as though the court had instructed the jury that respondent could not recover any of the amount paid for actual shortage. We discover no error in the reduction of the verdict, and are of opinion that the evidence sustains the verdict as reduced.

Affirmed.